UNITED STATES DISTRICT COURT
IN THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| United States of America, | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Cr. No. C-09-064 |
| | § | |
| Cesar Manuel Vega, | § | |
| Defendant. | § | |

## ORDER GRANTING MOTION TO SUPPRESS

The defendant, Cesar Vega, is charged with unlawfully dealing in firearms, 18 U.S.C. §§ 922(a)(1)(A), 923(a), and 924(a)(1)(D), and with attempting to export firearms, 18 U.S.C. § 554. The defendant moves to suppress all statements and evidence obtained by Texas Department of Public Safety Trooper Carlos Martinez following a traffic stop of Vega on December 21, 2008. For the reasons stated below, the Court GRANTS the defendant's motion and suppresses all statements and evidence obtained by the government in connection with the traffic stop.

### I. Background

On December 21, 2008, at approximately 10:32 a.m., Trooper Martinez saw the defendant's 2007 GMC pickup truck driving southbound on Highway 59, within the city limits of Beeville, Texas, towing an open, flatbed trailer carrying four all-terrain vehicles. When Trooper Martinez checked for the trailer's registration on his in-car computer, the computer responded with "no record." As a result, Trooper Martinez stopped the defendant to investigate if the trailer was

1

registered. Vega pulled his pickup and trailer into a car wash parking lot in Beeville.

Upon Trooper Martinez's request, Vega gave Trooper Martinez registration paperwork for the trailer, which showed it to be recently registered and homemade. Trooper Martinez testified that he was concerned because the registration's description of the trailer as "homemade" did not appear consistent with Vega's trailer, which Trooper Martinez recognized as factory-made. Specifically, the trailer contained professional-looking welds, diamond-plated fenders, and a wrap-harness not commonly observed on homemade trailers. Martinez suspected that the trailer might be stolen.

Before obtaining confirmation that the trailer was stolen, Trooper Martinez began to suspect that one of the four all-terrain vehicles on the trailer might also be stolen. He observed and testified that the Kawasaki Mule ("the Mule") appeared to have a fresh layer of paint covering a number of some kind on its hood. When Trooper Martinez asked Vega if he had registration paperwork for the Mule, Vega first told him that he was in possession of the requested paperwork. After Vega was unable to locate it, he changed his answer and told Trooper Martinez that the seller agreed to mail the paperwork to Mexico.

Because of this response, Trooper Martinez requested and received the defendant's permission to inspect the Vehicle Identification Number ("the VIN") for the Mule. According to the trooper, he was unable to locate the VIN even after retrieving an officer's handbook containing VIN locations for various vehicles.

2

Trooper Martinez also testified that he was not in possession of any tool kit that would have assisted him in obtaining access to the number.

Trooper Martinez then told the defendant to follow him to the Bee County Sheriff's Department garage, which was three miles away from the car wash. Trooper Martinez testified that it was not his intent to place the defendant under arrest and that Vega was not free to leave at this time. The United States does not argue that Trooper Martinez had probable cause at this time to arrest Vega.

After arriving at the garage, Trooper Martinez promptly located the identification number for the Mule without using any special tools. The trooper accessed the Mule's VIN by simply removing a strap and lifting the seat, a process that this Court finds could have been performed at the car wash parking lot. Upon confirming that the Mule was stolen, Trooper Martinez told the defendant that he was under arrest.

After placing Vega under arrest, but before providing *Miranda* warnings, Trooper Martinez asked Vega if he was traveling "with a large amount of currency and/or guns." The defendant answered yes to both items and retrieved a pistol case from beneath the center console. The nylon case did not contain a gun, but it did contain over $10,000 of U.S. currency concealed in the lining. After further questioning, Vega revealed that multiple guns were hidden in the upright portion of the rear seat, accessible through a plastic factory liner. Trooper Martinez discovered five guns in total, each wrapped with black electrical tape, and various calibers of ammunition.

3

## II. Analysis

The defendant moves to suppress the responses he gave to Trooper Martinez's inquiries and the guns and money obtained from the defendant's vehicle. Specifically, the defendant argues that the subjects of his motion are the products of an unlawful detention, unlawful arrest, and an unlawful custodial interrogation under the Fourth and Fifth Amendments.

### a. The Detention and Arrest of the Defendant

First, the defendant maintains that the traffic stop constituted an unreasonable search and seizure under the Fourth Amendment. Traffic stops are limited seizures that are analyzed under the two prong test of *Terry v. Ohio*, 88 S.Ct. 1868 (1968). *See United States v. Jenson*, 462 F.3d 399, 403 (5th Cir. 2006). Under *Terry*, in determining whether the stop was unreasonable, the Court must determine whether the stop was justified at its inception and whether it was reasonably related in scope to the circumstances which justified the interference. *Id.* at 1879.

#### i. *Justified at its Inception*

For a stop to be justified at its inception, "an officer must have an objectively reasonable suspicion that some sort of illegal activity, such as a traffic violation, occurred, or is about to occur, before stopping the vehicle." *United States v. Lopez-Moreno*, 420 F.3d 420, 430 (5th Cir. 2005). Reasonable suspicion exists "when the officer can point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the search

4

and seizure." *Id.* Additionally, although an officer's mere hunch will not suffice, the officer's suspicion need not rise to the level of probable cause. *Id.*

The defendant argues that the stop was not justified at its inception because Trooper Martinez observed no traffic violation and, therefore, had no reasonable suspicion based on articulable facts. The Court finds otherwise.

Under Texas law, "the owner of a motor vehicle, trailer, or semitrailer shall apply for the registration of the vehicle for: (1) each registration year in which the vehicle is used or to be used on a public highway; and (2) if the vehicle is unregistered for a registration year that has begun and that applies to the vehicle and if the vehicle is used or to be used on a public highway, the remaining portion of that registration year." TEX. TRANS. CODE § 502.002(a). Prior to the stop, Trooper Martinez conducted an in-car computer check on the trailer's license plate. The computer returned "no result" for the plate, indicating a strong possibility that the trailer was not registered in accordance with Texas law. Because the Court finds that Trooper Martinez had a reasonable suspicion that a traffic violation was occurring, the traffic stop was justified at its inception. Accordingly, the first prong of *Terry* is satisfied.

### ii. *Reasonably Related in Scope*

Vega also argues that the search and seizure was unreasonable because it was not reasonably related in scope to the circumstances which justified the stop. In such circumstances, the stop becomes a de facto arrest, and the officer must show probable cause to further detain the individual. *United States v. Zavala*, 541

5

F.3d 562, 579 (5th Cir. 2008). The defendant argues that the stop became excessive and intolerable in intensity and scope. The Court agrees.

The Supreme Court has "long held that the touchstone of Fourth Amendment analysis is reasonableness." *Ohio v. Robinette*, 117 S.Ct. 417, 421 (1996). Reasonableness "requires a balancing of the public interest with an individual's right to be free from arbitrary intrusions by law enforcement." *United States v. Brigham*, 382 F.3d 500, 507 (5th Cir. 2004). Under the second prong of *Terry*, the question is whether the officer's actions were reasonably related to the circumstances that justified the stop, or to dispelling his reasonable suspicion developed during the stop." *Id.* "This is because a detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop, unless further reasonable suspicion, supported by articulable facts, emerges." *Id.*

In determining whether a detention extends beyond a reasonable duration, there is no "constitutional stopwatch" on traffic stops. *Id.* at 511. Instead, the relevant question is "whether the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly." *United States v. Sharpe*, 105 S.Ct. 1568, 1575 (1985). Although "[a] creative judge engaged in *post hoc* evaluation of police conduct can almost always imagine some alternative means by which the objectives of the police might have been accomplished," the question is "not simply whether some other alternative was available, but whether the police acted unreasonably in failing to recognize or to pursue it." *Id.* at 1576.

In the present case, the Court finds that Trooper Martinez acted unreasonably in failing to recognize and pursue less-intrusive means for discovering the VIN. On cross-examination, Trooper Martinez admitted that the VIN was found by simply lifting the seat and that no special tools were required. Additionally, the trailer's VIN was located behind the right taillight. Although Trooper Martinez testified that his intent was to put the trailer on the garage's hydraulic lift, there is no testimony that the lift was ever used in locating the trailer's VIN. Trooper Martinez never provided the Court with an adequate explanation for why the investigation needed to be moved from a public location to the confines of the Bee County Sheriff's Department.

The Court is highly sensitive to seizing an individual on a public road or in a public place and taking the suspect to the confines of a police station without consent and without probable cause. In *Mendenhall*, the Supreme Court hinted that a similar removal of a suspect from a public location to a private location could offend the Fourth Amendment protections. *United States v. Mendenhall*, 100 S.Ct. 1870, 1878 (1980) (stating that it is arguable that the suspect's rights were violated when she was moved from the airport concourse to the DEA office).

Under the present facts, Trooper Martinez acted unreasonably in relocating the defendant from a public location to the sheriff's department. As stated above, reasonableness requires a balancing of the public interest with an individual's right to be free from arbitrary intrusions by law enforcement. The seizure of an individual on a public road and removing him to the sheriff's department, without

consent or probable cause, is a severe intrusion upon that individual's rights. The Court finds that under the present facts, this intrusion on Vega's rights to travel and move freely far outweighed police interests. This seizure was tantamount to an arrest of the defendant. The government has not offered, and the Court has not found through its own research, any case law that would support this intrusive method of investigation.

A detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop. *Brigham*, 382 F.3d at 507. If Trooper Martinez needed help in locating identification numbers, a far less intrusive and far more obvious approach would have been to radio for officer assistance. Trooper Martinez has failed to provide this Court with a valid reason for why this approach could not have been taken. Trooper Martinez has failed to provide this Court with any valid reason for why he needed to take the approach of seizing Vega and taking him to the sheriff's department.

Because the relocation of the defendant was unreasonable and needlessly prolonged the investigation, the Court finds that the detention exceeded the scope of the circumstances which justified the traffic stop. The Court finds that this relocation amounted to a de facto arrest that was not supported by probable cause or consent. Because the seizure of the defendant was unreasonable under the Fourth Amendment, the Court GRANTS the defendant's motion and suppresses all of the evidence obtained in connection with the traffic stop. *See United States v. Martinez*, 486 F.3d 855, 864 (5th Cir. 2007).

### b. The Interrogation of the Defendant

In his motion to suppress, the defendant also argues that the statements given to Trooper Martinez and the resulting physical evidence should be suppressed. Specifically, the defendant contends that his admission that he was carrying guns and currency, as well as the guns and currency, were obtained through an unlawful interrogation. The Court agrees with the defendant.

### c. The Statements

The Fifth Amendment requires the suppression of statements stemming from a custodial interrogation in which the defendant is not apprised of his rights. *Miranda v. Arizona*, 86 S.Ct. 1602, 1612 (1966); *see also United States v. Brathwaite*, 458 F.3d 376, 382 (5th Cir. 2006). It is undisputed that the defendant was in custody at the time Trooper Martinez inquired about guns and currency. The only issue is whether the trooper's questions rise to the level of an interrogation.

In *Innis*, the Supreme Court stated that an interrogation is questioning "that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Rhode Island v. Innis*, 100 S.Ct. 1682, 1689–90 (1980). The government maintains that the questions were asked for inventory purposes and that Trooper Martinez had no reason to suspect that they would elicit incriminating responses from the defendant. Therefore, the questions do not constitute interrogation for purposes of *Miranda*.

However, in his testimony, Trooper Martinez admitted that he views large amounts of currency and firearms as contraband and that possession of these items is "the kind of stuff [he] arrest[s] people for all the time." Transcript at 58. In *Innis*, the Supreme Court added that a "practice that the police should know is reasonably likely to evoke an incriminating response from a suspect thus amounts to interrogation." *Innis*, 100 S.Ct. at 1690. Although a question concerning the possession of "valuables" may have been proper for inventory purposes, the trooper should have known that inquiring about "a large amount of U.S. currency and/or guns" was reasonably likely to elicit an incriminating response from a suspect, especially one known to be headed to Mexico. If Trooper Martinez was concerned for his personal safety, the time to ask about weapons was when he initially pulled over the defendant, not twenty-five minutes later. The Court finds that this questioning did constitute an interrogation for purposes of *Miranda*. The statements made by the defendant and the testimonial actions of the defendant are suppressed.

### d. The Physical Evidence

Although Trooper Martinez's questioning was an unconstitutional interrogation under *Miranda*, the physical evidence revealed in it—the guns and the money—might arguably be admissible. The Supreme Court recently held that the introduction of the nontestimonial fruit of a voluntary statement does not always implicate the Self-Incrimination Clause. *United States v. Patane*, 124 S.Ct. 2620 (2004). According to a majority of the Court, crafted in two separate

opinions, the admission of such fruit does not necessarily run the risk that a defendant's coerced statements will be used against him at trial. *See Patane*, 124 S.Ct. at 2630 (plurality opinion); *Id.* at 2631 (Kennedy, J., concurring). Under *Patane*, if the search of the truck was reasonable for purposes of the Fourth Amendment, then the guns may not necessarily be suppressed.

Again recently, the Supreme Court limited the scope of a search of a vehicle incident to arrest. *Arizona v. Gant*, ___ S.Ct. ___ (2009). As in *Gant*, this vehicle and this defendant were under the control of the police. No explanation has been given here for why a search warrant or consent could not have been sought or obtained. The argument that this was part of an inventory search has already been shown to be dubious.

Because the Court finds that the defendant's Fourth Amendment rights were violated prior to his arrest by Trooper Martinez, both the statements and the physical evidence are suppressed. Because the Court finds that Trooper Martinez's questioning was an interrogation for purposes of *Miranda*, the statements made by the defendant and the testimonial actions of the defendant are suppressed.

ORDERED this  11  day of June, 2009.

_____
HAYDEN HEAD
CHIEF JUDGE